[Cite as *Yurkovich v. Kessler*, 2020-Ohio-4169.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

| | |
|---|---|
| Bonnie Yurkovich, et al. | Court of Appeals No. H-19-023 |
| Appellees | Trial Court No. WC 2018 00001 |
| v. | |
| Roberta Kessler, Individually and as Executrix of Estate of Rita Rose Justi | **DECISION AND JUDGMENT** |
| Appellant | Decided: August 21, 2020 |

* * * * *

Timothy J. Gallagher and Jessica S. Forrest, for appellees.

Reese M. Wineman, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant, Roberta Kessler, appeals the judgment of the Huron County Court of Common Pleas, Probate Division, invalidating the last will and testament of Rita Rose Justi in this will contest action pursuant to a jury's verdict in favor of appellees, Bonnie Yurkovich and Pamela Justi. Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} Rita, the mother of appellant and appellees, passed away on November 26, 2016. Four months later, on March 20, 2017, Yurkovich filed an application for authority to administer Rita's estate in case No. ES 2017 00058 (the "estate case"). On April 21, 2017, appellant filed objections to Yurkovich's application, in which she referenced a "new will & testament" that was executed by Rita on October 23, 2014. Appellant attached the will to her objections as an exhibit.

{¶ 3} An evidentiary hearing on appellant's objections was held in the estate case on June 23, 2017. Thereafter, on July 3, 2017, the probate court issued its judgment entry admitting the October 23, 2014 last will and testament to probate after finding that it was facially compliant with applicable law. Consequently, the probate court directed appellant to file an application for authority to administer Rita's estate, which appellant filed on July 25, 2017. On that same day, the probate court issued an entry naming appellant executrix of Rita's estate, thereby denying Yurkovich's application for authority to administer the estate. Subsequently, the parties commenced discovery in the estate case.

{¶ 4} As the estate case was proceeding through discovery, on January 25, 2018, appellees filed a complaint to contest the October 23, 2014 last will and testament admitted in the estate case. Pretrial discovery and motion practice commenced in the will contest action, culminating in a jury trial that began on November 18, 2019, and concluded the next day.

2.

{¶ 5} Several witnesses testified at trial. Pamela was first to testify. At the outset of her testimony, Pamela indicated that she cared for her parents in the years leading up to and following her father's death on September 1, 2013. Pamela stated that she visited her parents on a daily basis. During these visits, Pamela would perform general tasks for her parents, such as taking out the garbage, doing laundry, cleaning dishes, and cleaning the house. Further, Pamela routinely took Rita to Wal-Mart on Saturdays to pick up groceries.

{¶ 6} Pamela described her parents' condition during the final years of their lives as "feeble." According to Pamela, Rita suffered from "diabetes for a lot of years; then she was diagnosed with Parkinson's, and she had the onset of dementia or Alzheimer's. This was very evident."

{¶ 7} Describing appellant's involvement with her parents, Pamela stated: "She went by on Sunday nights with her granddaughter to visit them. She wasn't there any other time, but she had gone by on Sunday nights because that's the day that I would stay away." Pamela testified that appellant began coming around more often once her father died. According to Pamela, appellant started to assume more responsibility for caring for Rita at this point. Because Pamela and appellant do not get along well, Pamela decided to stop visiting Rita.

{¶ 8} Eventually, appellant changed the locks to Rita's home and changed Rita's phone number without informing Pamela. Following a fall in January 2014, Rita began living with appellant. Pamela lost contact with Rita after she moved into appellant's

3.

home. Pamela testified that appellant directed her to stay away from Rita, and Pamela complied because she didn't want to "poke the bear."

{¶ 9} Concerning the October 23, 2014 last will and testament that was at issue in this case, Pamela noted that Rita was in a nursing home at the time the will was executed. Only appellant is named as a beneficiary of Rita's estate under the October 23, 2014 will. According to Pamela, Rita never notified her of an intent to disinherit her prior to Rita's death. Indeed, Pamela had no knowledge of the October 23, 2014 will until she retained an attorney to pursue the present action.

{¶ 10} Bonnie was the second witness to testify. Bonnie stated that Rita's health deteriorated following the death of Bonnie's father in September 2013. According to Bonnie, Rita suffered from Parkinson's and tremors, and also started exhibiting "paranoid behaviors."

{¶ 11} Concerning estate planning matters, Bonnie explained that she took Rita to an attorney in December 2013 to rewrite her will. Bonnie testified that the rewritten will removed reference to Bonnie's father who had already passed away, and left the entire estate to Rita's three daughters equally. At this time, Rita also executed a power of attorney document naming Bonnie as her power of attorney for financial and healthcare matters. Unbeknownst to Bonnie, Rita, with appellant's assistance, changed her estate plan on October 23, 2014, when she executed a new last will and testament naming appellant as the sole beneficiary of the estate. Bonnie testified that she did not become aware of this change until she retained an attorney to pursue the present action, and

4.

further stated that Rita never expressed an intention to disinherit her and Pamela prior to her death.

{¶ 12} After Rita suffered the fall that caused a fractured hip in January 2014, Bonnie stated that she and Pamela assumed caretaker roles for Rita's benefit. Rita suffered another fall at some point between April and June 2014 while home by herself. By this time, Bonnie had noticed that Rita's mental faculties were further degrading. Bonnie recounted an instance in which the indoor temperature of Rita's residence rose to 87 degrees because Rita was "afraid someone was going to come in and get her. She refused to open doors, refused to open windows, she refused to turn on the air conditioner. She didn't want anyone to get her." Bonnie stated that Rita was unable to manage her medications and was easily confused. Bonnie also stated that Rita was paranoid about financial matters and unreasonably concerned that people were taking her money.

{¶ 13} On September 5, 2014, Rita was admitted to the hospital with a urinary tract infection. While in the hospital, Rita was diagnosed with dementia. According to Bonnie, appellant was caring for Rita at this time and was thus aware of the dementia diagnosis at the time of Rita's execution of the October 23, 2014 last will and testament that prompted the filing of this action.

{¶ 14} The third witness to testify in this matter was Catherine Thayer. Thayer was the legal secretary for the attorney who drafted Rita's October 23, 2014 last will and testament. At trial, Thayer testified that although she was one of the witnesses whose

5.

signature appears on the will, she did not specifically recall the details of Rita's execution of the will, nor could she remember whether Rita was exhibiting signs of dementia at the time.

{¶ 15} Following Thayer's testimony, appellees' counsel called appellant to the stand for cross-examination. When asked about the incident in which the indoor temperature of Rita's home reached 87 degrees, appellant explained that the cause of the excessive temperature was a broken air conditioning system that was subsequently fixed by Pamela.

{¶ 16} Appellant went on to affirm that she took Rita to a May 29, 2014 appointment at which Rita executed a power of attorney for financial matters appointing appellant as her agent. Regarding her appointment as power of attorney, appellant explained that she "talked to Bonnie about it and she wasn't too happy; other than that, [Pamela and Bonnie] didn't get a copy of it."

{¶ 17} In October 2014, appellant took Rita to her bank, where Rita submitted a change of beneficiary form related to her annuity through the Forethought Life Insurance Company. Appellant, who filled out the form for Rita, became the sole beneficiary of the annuity following the completion of the form.

{¶ 18} As to her involvement in Rita's execution of the October 23, 2014 last will and testament, appellant testified that she drove Rita to the appointment with her estate planning attorney. Appellant stated that she informed Bonnie of Rita's execution of a

6.

new will after the appointment, but did not disclose to Bonnie the fact that she was the sole beneficiary under the new will.

{¶ 19} As appellant's cross-examination continued, she acknowledged having written several checks to herself from Rita's account from 2014 until Rita's death in 2016. In particular, appellant agreed that she wrote two checks totaling $15,200 to herself less than one week prior to Rita's death, and after Rita suffered the stroke that ultimately took her life. Additionally, appellant confirmed that Rita gifted her the family farmhouse prior to her death. After Rita died, appellant received the entirety of Rita's Forethought annuity, totaling $295,667.57.

{¶ 20} Upon conclusion of appellees' cross-examination of appellant, the matter proceeded to appellant's case in chief. For her first witness, appellant called her longtime friend, Tammy Michaels. During her brief testimony, Michaels stated that appellant has a reputation for being an honest person. Michaels also stated that she had observed appellant's interaction with Rita and never found appellant to be dominating in her relationship with Rita. On cross-examination, Michaels testified that she was unaware of Rita's feelings about appellees and unfamiliar with Rita's financial affairs or estate planning documents.

{¶ 21} As her second witness, appellant called her daughter, Brittany Kessler. Brittany stated that appellant's relationship with Rita became closer after Rita's husband passed away. According to Brittany, appellant made frequent visits to Rita's home and "made sure [Rita] had everything she needed." Brittany rebuffed appellees' allegations

7.

of undue influence, noting that Rita "was pretty strong-willed, so anything [she] said, she got." Brittany responded in the negative when asked whether she had ever observed appellant attempting to override Rita's decisions. Moreover, Brittany testified as to Rita's mental faculties, stating that Rita "knew who I was every time I went [to visit Rita.] She could tell you both my kids' names."

{¶ 22} Following Brittany's testimony, appellant took the stand. Appellant testified regarding her relationship with Rita, noting that she cared for Rita when Bonnie was unavailable. Appellant stated that Rita appeared coherent in the months leading up to her execution of the October 23, 2014 last will and testament. Appellant explained that Rita "would tell you what she wanted to eat, when she would want to do something, when she would want like the laundry done. * * * She made her own decisions on everything."

{¶ 23} Regarding her involvement with Rita's execution of the October 23, 2014 last will and testament, appellant testified that she drove Rita to her estate planning attorney's office at Rita's request. Appellant noted that she was not present in the room when the will was executed. Further, appellant stated that she did not tell Rita what to include in the will. Appellant recounted an interaction with Rita in which Rita told her that the change in her estate plan "would probably be a fight later, but she told [appellant] that she did it for her reasons."

{¶ 24} As her testimony continued, appellant explained that there were certain periods of time where Rita would argue with Bonnie and Pamela. According to

8.

appellant, Pamela refused to allow Rita to live with her because she was upset with Rita disinheriting her. Regarding the breakdown in Rita's relationship with Bonnie, appellant stated:

> With Bonnie, it was more over her money and everything. Bonnie had told her that she got a debit card. Mom thought it was a credit card. When mom called and talked to the bank, she found out that it was attached to her checking and savings and my mom didn't want that. She was old school.

> She was afraid that within due time, Bonnie would help herself or do whatever; she was going to do that. Because Bonnie knew mom was old fashioned and didn't believe in all that, the cards and all. So, they argued and fought over that.

{¶ 25} On cross-examination, appellant acknowledged that Rita's doctor diagnosed her with memory loss at a September 17, 2014 appointment, at which appellant was present. Moreover, appellant conceded that the argument between Pamela and Rita in which Pamela allegedly referenced her disinheritance occurred in the spring of 2014, several months prior to Rita's execution of the October 23, 2014 last will and testament that removed Pamela as a beneficiary of Rita's estate.

{¶ 26} Appellant rested at the close of her testimony. Thereafter, appellees each took the stand in rebuttal and testified that they first became aware of the change to Rita's

9.

estate plan when they retained legal counsel in this matter. Additionally, Pamela denied having an argument with Rita in the spring of 2014.

{¶ 27} At the close of evidence, the parties provided closing statements and the trial court instructed the jury. After deliberating, the jury returned a verdict in favor of appellees and a finding that Rita's October 23, 2014 last will and testament is not a valid will. Pursuant to the jury's verdict in the present action, the probate court issued a judgment entry on November 22, 2019, in which it found that the October 23, 2014 last will and testament previously submitted to probate by appellant is invalid. Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 28} On appeal, appellant assigns the following error for our review:

The verdict and the decision of the trial court below constituted judgments that were against the manifest weight of the evidence based upon the fact that the plaintiffs provided insufficient evidence to overcome the presumed validity of the last will and testament of Rita Rose Justi, executed on October 23, 2014.

## II. Analysis

{¶ 29} In her sole assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence.

{¶ 30} The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d

10.

517, ¶ 17. Accordingly, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id*. at ¶ 20. In so doing, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶ 31} Here, appellant argues that appellees did not meet their burden of demonstrating that Rita was incompetent at the time of her execution of the October 3, 2014 last will and testament. In response, appellees assert that their evidence was sufficient to demonstrate Rita's lack of testamentary capacity and appellant's exercise of undue influence over Rita.

{¶ 32} The test of testamentary capacity is whether the person "has sufficient mind and memory: First, to understand the nature of the business in which [she] is engaged; Second, to comprehend generally the nature and extent of [her] property; Third, to hold in [her] mind the names and identity of those who have natural claims upon [her] bounty; [and] Fourth, to be able to appreciate [her] relation to the members of [her] family." *Niemes v. Niemes*, 97 Ohio St. 145, 119 N.E. 503 (1917), paragraph four of the syllabus. There is a rebuttable presumption that a person is competent unless they have been legally declared mentally incompetent. *In re Estate of Flowers*, 2017-Ohio-1310, 88 N.E.3d 599, ¶ 85 (6th Dist.), citing *Cameron v. State Teachers Retirement Bd. of Ohio*, 10th Dist. Franklin No. 00AP-425, 2000 WL 1753116, *11 (Nov. 30, 2000), *Buzzard v. Public*

11.

*Employees Retirement Sys. of Ohio*, 139 Ohio App.3d 632, 637, 745 N.E.2d 442 (10th Dist.2000), and *Dover v. Durkoske*, 11th Dist. Lake No. 92-L-067, 1993 WL 262620, *3 (June 30, 1993). Therefore, appellees had the burden to overcome the presumption with clear and convincing evidence. *Id.*

{¶ 33} The issue of competency is determined by reference to the mental condition of the testatrix at the time of her execution of the will. *In re Estate of Fruchtman v. Fruchtman*, 6th Dist. Lucas No. L-84-234, 1985 WL 8383, *2 (Feb. 1, 1985). Incompetency may be established by a lay witness who observed the mental state of the testatrix and could assess whether the person was of sound mind to make a testamentary disposition. *Flowers* at ¶ 86, citing *Weis v. Weis*, 147 Ohio St. 416, 72 N.E.2d 245 (1947), at paragraph two of the syllabus.

{¶ 34} At trial, Pamela stated that Rita's dementia had become very evident during the final years of her life. Likewise, Bonnie stated that Rita's health deteriorated following the death of Bonnie's father in September 2013. According to Bonnie, Rita started exhibiting "paranoid behaviors" and, by the summer of 2014, Bonnie noticed that Rita's mental faculties were further degrading. As an example of Rita's mental degradation and paranoia, Bonnie pointed to the instance in which the indoor temperature of Rita's residence rose to 87 degrees because Rita was "afraid someone was going to come in and get her." Bonnie further testified that Rita was unable to manage her medications, was easily confused, and was paranoid about financial matters and unreasonably concerned that people were taking her money.

12.

{¶ 35} Upon consideration, we find that the foregoing evidence of Rita's mental degradation does not establish Rita's lack of testamentary capacity to execute the October 23, 2014 last will and testament in this case. Bonnie and Pamela's testimony concerning Rita's mental condition established that Rita was suffering from dementia at the time of the execution of the will. However, "[e]vidence of dementia alone is insufficient to establish a lack of testamentary capacity; there must be evidence of how the dementia impacted the person's testamentary capacity." *Flowers* at ¶ 86, citing *Stewart v. Boland*, 2015-Ohio-1712, 33 N.E.3d 551, ¶ 15 (1st Dist.).

{¶ 36} Here, the evidence introduced by appellees did not show how Rita's dementia rendered her unable to understand the nature of the business in which she was engaged, comprehend the nature and extent of her property, hold in her mind the names and identity of those who have natural claims upon her bounty, or appreciate her relation to the members of her family. Rather, the evidence of Rita's dementia was used to explain Rita's irrational paranoia of the world around her.

{¶ 37} Because the record lacks clear and convincing evidence that Rita lacked testamentary capacity, we find that appellees failed to overcome the presumption that Rita was competent to execute her October 23, 2014 last will and testament. However, that does not end our analysis, because appellees also argued that the October 23, 2014 last will and testament was the product of appellant's undue influence over Rita.

{¶ 38} In order to prove undue influence, appellees were required to establish "(1) a susceptible party; (2) another's opportunity to exert [influence]; (3) the fact of

13.

improper influence exerted or attempted; and (4) the result showing the effect of such influence." *West v. Henry*, 173 Ohio St. 498, 510-511, 184 N.E.2d 200 (1962).

{¶ 39} At trial, appellees introduced evidence going to each of the foregoing elements of undue influence. As to Rita's susceptibility, Pamela stated that Rita suffered from dementia and described Rita's condition as "feeble." Rita's medical records confirm the dementia diagnosis. Further, Bonnie stated that Rita had become paranoid about her finances in the months leading up to her execution of the October 23, 2014 last will and testament. Bonnie testified that Rita was easily confused and unreasonably concerned that people were taking her money. Taken together, this evidence supports the conclusion that Rita was a susceptible testatrix on October 23, 2014.

{¶ 40} Concerning appellant's opportunity to exert influence over Rita, the evidence introduced at trial established that appellant began to live with Rita after Rita suffered a fall in January 2014. Thereafter, appellant began to take control of Rita's financial affairs, ultimately becoming Rita's power of attorney for financial matters in May 2014, five months before Rita's will was executed. Under these circumstances, appellant had a clear opportunity to exert influence over Rita.

{¶ 41} Turning to the third element of undue influence, the fact of improper influence exerted, there was evidence introduced at trial from which the jury could have concluded that appellant improperly influenced Rita to execute the October 23, 2014 last will and testament. Specifically, appellant acknowledged that she took Rita to the May 29, 2014 appointment at which Rita completed the power of attorney document

14.

naming appellant as Rita's agent. Appellant also indicated that she took Rita to the bank in October 2014 so that Rita could submit a change of beneficiary form, which was completed by appellant, naming appellant as the sole beneficiary of Rita's Forethought annuity account. As to her involvement in Rita's execution of the October 23, 2014 last will and testament, appellant testified that she drove Rita to the appointment with her estate planning attorney. Taken together, this evidence supports the notion that appellant took an active role in facilitating Rita's changes to her estate plan in the fall of 2014.

{¶ 42} Finally, the result of appellant's influence is obvious. The net effect of the changes to Rita's estate planning was the complete disinheritance of Bonnie and Pamela from their mother's estate. There is no dispute that, prior to the changes, Rita's estate was to be divided equally among Rita's daughters. However, pursuant to the changes Rita made under appellant's influence, appellant is now the sole owner of the family farmhouse, the sole recipient of the proceeds of Rita's Forethought annuity, and the sole beneficiary of Rita's estate under the October 23, 2014 last will and testament. This distribution is suspicious in light of Rita's relationship with Pamela and Bonnie, both of whom helped to care for her at various points in time during her final years.

{¶ 43} In sum, the jury was presented with evidence that, if believed, could establish that Rita's execution of the October 23, 2014 last will and testament was the product of appellant's exercise of undue influence over Rita. Therefore, we cannot say that the jury clearly lost its way when it invalidated the October 23, 2014 last will and

testament, and we do not find that the jury's verdict was against the manifest weight of the evidence. Accordingly, we find appellant's sole assignment of error not well-taken.

### III. Conclusion

**{¶ 44}** In light of the foregoing, the judgment of the Huron County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.